Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| JUAN M. CRUZADO LAUREANO<br><br>Apelante<br><br>v.<br><br>PARTIDO POPULAR DEMOCRÁTICO Y SU JUNTA DE GOBIERNO<br><br>Apelado | KLAN202400474 | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Civil núm.: SJ2024CV02347 (904)<br><br>Sobre: Descalificación de Aspirante Primarista a Gobernador de PR por el PPD |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Sánchez Ramos, Juez Ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 17 de mayo de 2024.

Por no considerarlo como un candidato idóneo, en parte por razón de su condena en la jurisdicción federal por varios delitos graves, el Partido Popular Democrático ("PPD") no calificó como aspirante legítimo a la gobernación al Sr. Juan M. Cruzado Laureano (el "Demandante"). El Tribunal de Primera Instancia ("TPI") desestimó, por las alegaciones, la acción de referencia (la "Demanda"), mediante la cual se impugnó la referida determinación. Según se explica a continuación, concluimos que procede confirmar la sentencia apelada.

I.

El 11 de marzo de 2024, por derecho propio, se presentó la Demanda en contra del PPD y su Junta de Gobierno (la "Junta"). El Demandante señaló que, el 2 de marzo de 2024, la Junta le notificó que había sido descalificado como aspirante a la gobernación por el PPD, ello sobre la base de un informe, con fecha de 10 de febrero (el

"Informe"), preparado por el Secretario General del PPD (el "Secretario").

El Demandante alegó que, contrario a lo que concluyó el Secretario, su expediente sí estaba completo.

Segundo, el Demandante admitió que fue objeto de un proceso penal federal por el cual resultó culpable (alude a "la convicción 01-690(JAF) del 7 de junio de 2002") y por lo cual fue sentenciado a "5 años de cárcel y 3 años de libertad supervisada". No obstante, arguyó que cuando él, en el 2021, impugnó ante el Tribunal Supremo de Estados Unidos la validez de su condena, el Departamento de Justicia federal había optado por no presentar una oposición a su recurso, por lo cual debía concluirse que dicha agencia "reconoció como válido" que la "convicción lograda" en el 2002 fue "totalmente ilegal". Ello a pesar de reconocer que su recurso ante el Tribunal Supremo de Estados Unidos fue denegado por dicho foro.

El PPD solicitó la desestimación de la Demanda. Arguyó que faltaban partes indispensables, que el expediente del Demandante no se completó, según requerido a todo aspirante a un puesto electivo, y que no se debía permitir que el Demandante continuara representándose a sí mismo.

En la moción de desestimación, el PPD también planteó que la Demanda dejaba de "exponer una reclamación que justifique la concesión de un remedio". Resaltó que "tanto la Comisión Calificadora, el Secretario General del PPD y la Junta de Gobierno entendieron en su criterio que el [Demandante] no era un aspirante idóneo". Arguyó que esta determinación debía ser respetada por el TPI a la luz de su "amplia libertad para seleccionar a las personas que habrán de evocar públicamente los principios básicos de su organización en los comicios electorales". Ello de conformidad con

su derecho constitucional de asociación y bajo lo dispuesto en la Ley 58-2020 (el "Código Electoral").

Mediante una sentencia notificada el 8 de mayo (la "Sentencia"), el TPI desestimó la Demanda. El TPI estimó que la Demanda se presentó bajo el Artículo 13.2 del Código Electoral, el cual requiere que la acción se presente y notifique, a cualquier "parte adversamente afectada", dentro de 10 días de la actuación impugnada. El TPI concluyó que, como la Demanda no se notificó, dentro del referido periodo, a la Comisión Estatal de Elecciones (la "Comisión"), ni a los otros aspirantes a la gobernación por el PPD, no tenía jurisdicción para adjudicar la misma.

El 13 de mayo, por derecho propio, el Demandante presentó el recurso que nos ocupa. Arguye que la Demanda no se presentó bajo el Artículo 13.2 del Código Electoral, pues el mismo únicamente contempla la revisión de las determinaciones de la Comisión o de una de sus comisiones locales. Plantea que el TPI debió celebrar una "vista evidenciaria" con el fin de adjudicar su "idoneidad" como candidato del PPD a la gobernación y si realmente su expediente estaba incompleto.

II.

Aun partiendo de la premisa del Demandante, a los efectos de que el Artículo 13.2 no es aplicable en este contexto, de todas formas procede la confirmación de la Sentencia, pues la Demanda no plantea una causa de acción viable.

En el Informe, se hace alusión al "Artículo 244" del "Reglamento Interno" del PPD, según el cual el PPD "ofrecerá la alternativa de gobierno más capaz y honesto al país". Además, se cita el "Artículo 246" del mismo reglamento, según el cual "no podrá aspirar a una candidatura electiva por el" PPD quien haya sido "convict[o] de delito grave". Finalmente, en el Informe se reseña que, de conformidad con la misma disposición reglamentaria, tampoco

podrá ser aspirante una persona cuando, por cualquier razón, ello vaya "en contra de los mejores intereses" del PPD, lo cual resultaría en que no sea un(a) candidato(a) "idóneo(a)."

En la Demanda, no se articula teoría jurídica alguna para impugnar la determinación del PPD a los efectos de que, de conformidad con su reglamentación interna, el Demandante no es un candidato "idóneo" por razón de su condena por delitos graves en la jurisdicción federal.  Como cuestión de derecho, es incorrecto que, por haber optado por no presentar una oposición a un recurso ante el Tribunal Supremo federal, el Departamento de Justicia federal haya de algún modo admitido que la condena del Demandante fue "ilegal".  El propio Demandante reconoce que tuvo que cumplir con condena de reclusión y libertad supervisada y que no ha logrado que tribunal alguno anule o deje sin efecto el fallo de culpabilidad en su contra.

Resaltamos que la libertad de asociación de un partido político constituye un derecho fundamental, lo cual incluye el proponer candidatos de su predilección para participar en el proceso electoral. *P.N.P. v. De Castro Font II,* 172 DPR 883, 892 (2007); *McClintock v. Rivera Schatz,* 171 DPR 584, 597 (2007); *California Democratic Party v. Jones,* 530 U.S. 567 (2000); *Tashjian v. Republican Party of Connecticut,* 479 U.S. 208 (1986).

Por ello, los partidos políticos poseen amplia libertad para seleccionar a las personas que habrán de representar públicamente los principios básicos de su organización en los comicios electorales. *New York State Bd. Of Elections v. López Torres,* 552 U.S. 196 (2008); *P.N.P. v. De Castro Font II, supra; California Democratic Party v. Jones, supra; Washington State Grange v. Washington State Republican Party,* 552 U.S. 442 (2008).  Figurar como candidato en una papeleta eleccionaria, no constituye un derecho fundamental. *P.N.P. v. De Castro Font II,* 172 DPR a las págs. 895-896; *McClintock*

*v. Rivera Schatz,* 171 DPR a las págs. 603-604; *García v. Luciano,* 115 DPR 628 (1984).

Salvo que el tribunal se enfrente a alguna violación al debido proceso de ley, o a una determinación arbitraria o violatoria de algún principio de igual protección de las leyes, la determinación del partido político al respecto no puede ser descartada por un tribunal. *Democratic Party of United States v. Wisconsin ex rel. LaFollette*, 450 U.S. 107 (1981); *McClintock v. Rivera Schatz, supra.*

De conformidad, el Código Electoral reconoce esta facultad de los partidos políticos. Por ejemplo, en su Artículo 7.2, dispone que los "Partidos Políticos podrán reglamentar los requisitos internos para que sus afiliados puedan aspirar a un cargo en su reorganización interna o aspirar en primarias a la candidatura de un cargo público electivo." 16 LPRA sec. 4612. Además, en su Artículo 7.6, reconoce que un partido político "podrá rechazar la intención de aspiración primarista de una persona o su candidatura a cargo público" cuando la persona "no ha cumplido con los requisitos establecidos en ... los reglamentos de primarias aprobados por ..... el Partido Político concernido". 16 LPRA sec. 4616.

En fin, la Demanda no plantea una causa de acción viable, pues no se alega que haya sido arbitraria, a la luz de la reglamentación del PPD, la determinación de descalificar al Demandante de su aspiración a figurar como candidato a la gobernación por el referido partido político.

III.

Por los fundamentos antes expuestos, se confirma la sentencia apelada.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones